## THE CONSOLIDATED STONE COMPANY *v.* WILLIAMS.

[No. 3,001.  Filed May 29, 1900.  Rehearing denied Jan. 22, 1901.]

PLEADING.—*Construction.*—*Negligence.*—A complaint which alleges facts showing that plaintiff, a workman in a stone quarry, was injured while in the performance of his ordinary duties and while in a place that was unsafe, solely by reason of the defective condition of a rope, of which it is alleged that defendant had knowledge and plaintiff did not, must be regarded as counting upon the defective condition of the rope and defendant's knowledge thereof, and allegations as to an express direction by the employer to work in a dangerous place do not aid the complaint. *pp. 131-135.*

SAME.—*Inconsistent Allegations.*—The fact that plaintiff was a "derrick boss" in a stone quarry is not inconsistent with an allegation that he did not know of a defect in a rope used in lowering the derrick. *p. 135.*

MASTER AND SERVANT.—*Pleading.*—*Negligence.*—A servant suing his employer for damages sustained by reason of the breaking of defective appliances is not bound to show in his complaint that he had inspected the same, or that he had not had an opportunity to

Consolidated Stone Co. *v.* Williams.

inspect them, or that he could not have learned of the defects by the exercise of ordinary care and diligence. *p. 135.*

TRIAL.—*Verdict.—Answers to Interrogatories.*—Answers to interrogatories returned with a general verdict do not constitute a special verdict. *p. 135.*

WITNESS—*Expert.—Opinion Evidence.*—A witness of long experience in the use of ropes in handling and lowering derricks, who had personal knowledge of the size, length of use and condition of the rope which broke and injured plaintiff when lowering a derrick, and of the use to which it was being put when it broke, and who had fully stated to the jury the facts on which his opinion was based, was competent to express an opinion as to whether the particular rope was of sufficient strength for the use to which it was being put in lowering the particular derrick when it broke. *pp. 135, 136.*

TRIAL.—*Variance.—Harmless Error.*—A variance between the complaint and the evidence which was not of such a character as to mislead defendant in the preparation of its defense is not cause for reversal. *pp. 137, 138.*

From the Lawrence Circuit Court. *Affirmed.*

*H. C. Duncan* and *I. C. Batman,* for appellant.

*J. R. East* and *McHenry Owen,* for appellee.

BLACK, J.—The appellee's complaint, consisting of a single paragraph, was held sufficient on demurrer. It showed that the appellant, a corporation, was engaged in the business of quarrying and shipping stone in Lawrence county; that in the management of its business, it employed a great number of hands, derricks, ropes, and machinery; that the appellee was its employe as derrick boss, receiving a sum stated per day for his services; that it was his duty while in the employment of the appellant to obey the orders, directions, and commands of one Albert Stone, who was the appellant's general superintendent and had full charge of the appliances, machinery, hands, and business in detail; that it was the appellee's duty to give signals while operating the derrick, as directed by said superintendent; that on the 22nd of May, 1897, the appellant ordered and directed that the derrick should be let down and the mast pole, some sixty feet high, gradually lowered to the ground southward by means of ropes, two guy-ropes and one slack rope; that

said guy-ropes were fastened to the top of said mast pole, and the other ends of these ropes were fastened to trees or other derricks and stones, east and west, at the bottom of said mast pole at such distances as to pull against each other at the top of the mast, while a third rope was fastened to the top of the mast pole and the other end fastened to pulleys, called a block and tackle, at the bottom, in such manner that in lowering the mast said third rope would unwind gradually and slowly lower the top end of said mast to the ground; that in lowering it, to do the work safely, it required that all of said ropes be of wire or heavy hemp and of sufficient strength to hold the mast during its entire descent to the ground, and that "each" should be slackened together; but the rope known as the slack rope, on the north, was old, defective, and partially decayed and unfitted to lower said derrick; that it was made of grass or hemp, was too small in size, being but one inch in diameter, and too weak to bear up the weight of said mast pole; all of which facts as to its defective condition and unfitness for the purpose for which it was being used were well known to the appellant at and prior to the appellee's injuries hereinafter mentioned, but were entirely unknown to the appellee; that just prior to the lowering of said derrick, the appellant through its superintendent ordered and directed the appellee to go to a point south of the mast, near the place where its top would be when it reached the ground, but out of reach of said mast, and there to remain until the mast was lowered, and then to adjust it on some pieces of timber; that appellee obeyed said order and went to said point, which was apparently safe to him, and he would have escaped any injury had said rope not been so defective and dangerous; but by reason of its being defective and liable to break and allow the mast suddenly to wrench eastward, the place where he was ordered to work was dangerous and unsafe to work about, "which dangers and dangerous place were well known to" the appellant, but wholly unknown to the appel-

lee at and before his injuries; that while in the line of his duty under his employment and while obeying the order of the appellant, and while using 'all care and caution, and without fault on his part whatever, while watching the descent of said mast and surroundings of the place, the said north slack rope by reason of being defective, dangerous, and unsafe suddenly broke and allowed said mast pole suddenly to wrench to the east and with great force jerk the west guy-rope, which at the time was some thirty feet away from the appellee, against his right side and arm so suddenly that he had no time to escape from it. The injury thus inflicted was described, and it was alleged that all said injuries were caused solely by the negligence and carelessness of the appellant in the use of said slack rope when it was defective and dangerous as herein set forth, and in the ordering of the appellee to the place of his injury, well knowing that said slack rope was liable to break and injure the appellee at that place; and that all said injuries were so received without any fault, carelessness or negligence on the part of the appellee, etc.

Whatever may have been the intention of the pleader, the complaint can not be regarded as charging the appellant with negligence in removing the appellee from a safe place in which he had been employed to work to perform work temporarily outside of the scope of his employment in an unsafe place. It is expressly shown that he was in the line of his employment when injured. It is shown that the place was dangerous, but it was so only by reason of the defectiveness of the guy-rope. The averments relating to the place and the order to work there and the appellant's knowledge and the appellee's ignorance as to its being a dangerous place can be regarded only as aiding in showing that the appellee was working in the line of his duty and that the appellant had knowledge while the appellee was ignorant of the liability of the appellee to injury through the defectiveness of the guy-rope while he was so engaged within

the scope of his employment. It was alleged that the place was apparently safe to the appellee and that he would have escaped injury if the rope had not been defective. The danger or safety of the appropriate place for his proper work was dependent only on the quality of the guy-rope. It was the appellant's knowledge of the defectiveness of the rope alone that gave it notice of the liability of a person working there to be injured. The only wrong sufficiently alleged was the negligence in using the insufficient guy-rope with knowledge of its insufficiency, and of the consequent danger, whereby the appellee, working within the scope of his employment, in ignorance of such defectiveness and danger, was injured.

The suggestion of counsel that the facts particularly alleged were necessarily inconsistent with the general averment of want of knowledge on the part of the appellee, is not a just criticism. It was not impossible, under the circumstances shown by the complaint, as a matter of fact, for the appellee to be ignorant of the insufficiency of the guy-rope. It was not necessary for him to show in his pleading that he had inspected the rope, or that he had not had opportunity to inspect it, or that he could not have learned of its defectiveness by the exercise of ordinary care and diligence. *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156; *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297. The complaint was sufficient to put the appellant to its answer.

The appellant having answered by a denial, the cause was tried by jury, and a general verdict in favor of the appellee was returned with answers of the jury to interrogatories. Counsel have devoted some portion of the argument to an assignment of error in overruling the appellant's motion for judgment on the special verdict. This assignment can not be regarded as properly presenting any question for decision, inasmuch as the record does not contain a special verdict or show that a special verdict was rendered.

Charles Quackenbush, a witness for the appellee, had

testified, amongst other matters, that he had been engaged in the quarry business about twenty years; that at the time of the injury in question he was assistant superintendent of the appellant at the quarry where the injury occurred; that he remembered the slack rope which broke and had known it about two years, may be longer; that it was seven-eighths of an inch or one inch in diameter; that it was between two hundred and two hundred and fifty feet long; that it had been in use there in the quarry for two years, and he thought longer; that it was worn some, more in some places than in others; that he had lowered several derricks, had handled a good many derricks, and had had sufficient experience to know the usual and best methods of lifting and lowering derricks. The witness was permitted, over the appellant's objection, to answer the following question: "Now, from what you have said as to the size of this rope, and said as to its being old and worn, more in some places than in others, I will ask you to state to the jury whether that rope was sufficient to lower the mast pole of that derrick, basing your answer on what you have said on the witness stand, and from your long experience in handling derricks." The witness answered that the rope was not in shape to let that derrick down, was not sufficient in strength.

It was not necessary, we think, for the witness to be shown to have skill or experience in the making of ropes, to authorize the acceptance of his opinion as to the sufficiency in strength of the particular rope for the use to which it was put in lowering the particular derrick, the witness basing his opinion upon the facts first stated by him, including his own experience. After the best description that could have been given by witnesses of the rope and the derrick, the conclusion of the jury would be in some measure based upon conjecture; and the honest opinion of a man so qualified would conduce to greater certainty. See *Porter* v. *Pequonnoc Mfg. Co.,* 17 Conn. 249; *Hardy* v. *Merrill,* 56 N. H. 227, 241; *Bennett* v. *Meehan,* 83 Ind.

566, 43 Am. Rep. 78; *Louisville, etc., R. Co.* v. *Wood,* 113 Ind. 544.

A number of other supposed errors in the admission and the exclusion of testimony are argued by counsel. The matters so presented have been carefully examined by us without finding any ground for reversal, and the questions involved are not of such importance as to require further notice here.

There is also some brief discussion of the instructions. There is some want of agreement between the record and the reference thereto in the appellant's brief, and the appellant has failed to comply with the requirements of our rules relating to the discussion of instructions. In the introduction of the evidence a number of models of derricks were used, and the references thereto in the examination of the witnesses and in their answers to the questions of the attorneys are in many instances unintelligible as they appear in the record.

We have bestowed much time upon the voluminous bill of exceptions containing the evidence in our effort to determine the question extensively argued by counsel as to whether or not the case made by the evidence was substantially different from the cause of action set forth in the complaint. The mode of lowering the mast as shown by the evidence was not accurately described in the pleading. A wire rope, called in evidence the main fall, which was fastened to the mast near the top thereof, extended northward and, passing over a drum, was operated by steam power, and the slackening of this rope by this method permitted the mast to descend southward. This rope did not break. The rope, by the breaking of which the injury was caused, was a slack rope made of hemp or grass used in connection with block and tackle, as alleged in the complaint, for gradually slackening the guy, a wire rope which extended westward, instead of northward as stated in the complaint. The guy which extended eastward was fastened without means of slacking.

The idle guy, which struck the appellee, was a wire rope which extended from the top of the mast toward the southwest to a point where it was fastened, so that by the descent of the mast it became slackened and fell to the east with the mast. The rope which broke and the use which was made of it were described in the complaint as they were proved on the trial, except as above indicated. There was a variance, but it does not seem to have been one of such character that the appellant could be regarded as having been misled in the preparation of its defense. We can not conclude that there was a failure to prove the substantial averments of the complaint.

Judgment affirmed.