James R. LEWIS, Administrator of the Estate of Barbara Lewis, Deceased, Appellant (Plaintiff Below),

v.

Lyle B. DAVIS, Appellee (Defendant Below).

No. 3-1179A319.

Court of Appeals of Indiana, Third District.

Oct. 8, 1980.

Edward W. Bayliff, Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, Kokomo, Richard M. Rhodes, Peru, for appellant.

Arthur A. May, May, Oberfell, Helling, Lorber, Campiti & Konopa, South Bend, for appellee.

STATON, Judge.

James R. Lewis, as administrator of the estate of Barbara Lewis, brought a medical malpractice action against Dr. Lyle B. Davis. The jury returned a verdict for Dr. Davis and against Lewis. The trial court entered judgment accordingly.

On appeal, Lewis raises three issues for our consideration:

(1) Did the trial court, at the close of the final argument of counsel, err by refusing to grant his motion for a mistrial?

(2) Did the court commit an error in denying his Motion to Amend the Pre–Trial Order at the conclusion of the evidence?

(3) Did the trial court err in giving and failing to give certain instructions to the jury?

We affirm.

## I.

### Motion for Mistrial

During final argument, the defense counsel referred to a surgical procedure which had allegedly been performed in a negligent fashion by one of Lewis' medical experts. There was scant evidence in the record to support this allegation and when asked, during cross–examination, if it were true, the physician replied "I don't know what you're talking about." Lewis' objection to this reference was made during final argument. It was overruled by the court and Lewis' motion for a mistrial was denied.

On appeal, he argues that the defense counsel went outside the record to unfairly and improperly attack his medical expert. By this action, he asserts, prejudice must be presumed and a new trial ordered.

In determining what is improper or harmful argument, the trial court has considerable latitude. *Sheridan v. Siuda* (1971), 150 Ind.App. 395, 276 N.E.2d 883. This Court will not interfere with the decision of the jury unless it appears from the entire record that the misconduct of counsel was probably the means of securing a wrong verdict. *Sheridan, supra; Snow v. Cannelton Sewer Pipe Co., et al.* (1965), 138 Ind.App. 119, 210 N.E.2d 118.

During the trial, each party presented a great deal of evidence and engaged in thorough cross–examination. The questions of whether Dr. Davis was guilty of malpractice and whether any failure on his part was the proximate cause of Mrs. Lewis' death were hotly contested issues. Lewis presented a number of Mrs. Lewis' relatives and several expert medical witnesses.[1] All testified as to some aspect of Mrs. Lewis' death, allegedly caused by an improperly treated allergic reaction to Triavil, a drug prescribed by Dr. Davis.

The trial court was in a far better position than this Court to view these allegations of wrongful conduct in context of the entire trial. It heard all of the evidence and both final arguments. As a result, it was best able to determine whether counsel's improper remark had any harmful effect upon the jury.

From a review of the voluminous record, we are not convinced that counsel's comment was "the means of securing a wrong verdict." *Sheridan, supra*, 276 N.E.2d at 888. We cannot say, as a matter of law, that the wrong result was reached.

## II.

### Pre–Trial Order

Lewis next contends that the trial court committed an error of law by denying his Motion to Amend the Pre–Trial Order to Conform to Proof. The motion was made, he explains, to clarify the agency relationship between nurse Jefferson and Dr. Davis. Lewis claims that, without this amendment, "the evidence could have been misinterpreted by the jury. They could have believed that Barbara Lewis died because of improper nursing care and failed to connect that cause to the orders of Dr. Davis."

In making this contention, Lewis relies solely upon the following testimony of Dr. Davis as evidence of nurse Jefferson's agency relationship with him.

"Q. Under what you've told us here, sir, Nurse Jefferson did exactly what you told her to do, isn't that right?

"A. Apparently so, yes.

---

1. The physician, whose surgical expertise was called into question by the defense counsel, was only one of Lewis' expert medical witnesses.

"Q. And this was a practice you had back in '73, where you could send patients to the hospital to get injections and medications, right?

"A. Yes, sir.

"Q. And this was something that was done when your own offices were closed, there was no nurse there to do such things?

"A. Frequently we did this.

"Q. And the nurse at the hospital was doing for you what normally the nurses at the office would be doing for you in giving injections, correct?

"A. That's true.

"Q. It was—that system that was in use here was a kind of system in which the hospital was sort of an extension of your office on weekends, isn't that true, sir?

"A. Pretty much so, yes."

■ A pre–trial order delineates the issues in the case and supplants the allegations raised in the pleadings. All subsequent pleadings are then controlled by this pre–trial order. *Dominguez v. Gallmeyer* (1980), Ind.App., 402 N.E.2d 1295. Such an order may be modified, as per Ind. Rules of Procedure, Trial Rule 15(B), in order to conform to the evidence. *Colonial Mortgage Company of Indiana, Inc. v. Windmiller* (1978), Ind.App., 376 N.E.2d 529.

■ Such an amendment is permitted where issues not contained in the pre–trial order are, in fact, litigated by express or implied consent. *Colonial Mortgage Company of Indiana, supra* at 534, n. 3. It is within the trial court's discretion to permit or deny modification of the pre–trial order. On appeal, this Court is limited to a determination of whether the court abused its discretion. *Dominguez, supra.*

The pre–trial order did not delineate the question of agency as being at issue. Lewis contends, however, that the bringing forth of such evidence at trial necessitates the modification of the pre–trial order.[2] After a review of the record, we are not persuaded that this is the case.

■ An agency relationship is one which results from a "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Department of Treasury v. Ice Service* (1942), 220 Ind. 64, 41 N.E.2d 201, 203. It arises from the consent of the parties, out of a contractual agreement between the parties. It is not necessary that the contract or the authority of the agent to act be in writing. *Department of Treasury, supra.* It is necessary that the agent be subject to the control of the principal with respect to the details of the work. *Western Adjust. & Insp. Co. v. Gross Income Tax Div.* (1957), 236 Ind. 639, 142 N.E.2d 630.

The evidence indicates that nurse Jefferson, a registered nurse with more than twenty years of nursing experience, was an employee of Woodlawn Hospital. She was on duty as "supervisor at the hospital" the evening Barbara Lewis was brought to the hospital to receive the shot of Gomonol ordered by Dr. Davis.[3] Her duties included taking "care of the hospital in general, including the emergency room." She had been employed by the hospital in this supervisory capacity on the evening shift for two years.

In giving the medication ordered by Dr. Davis, Mrs. Jefferson was acting as a hospital employee in the performance of a service for one of the doctors associated with

2. He sought to amend sub‑paragraph 5c of the Pre‑Trial Order:

"c. Defendant negligently failed to personally examine and treat the decedent when he was called to do so by the decedent's husband on May 6, 1973, at approximately 6:00 P.M."

to read as follows:

"Defendant personally and through the conduct of Nurse Esther Jefferson failed to examine and treat the decedent when defendant was called to do so by decedent's husband on May 6, 1973, at approximately 6:00 P.M.

3. This drug was ordered by Dr. Davis to relieve congestion; it was not the drug which precipitated Mrs. Lewis' alleged allergic reaction.

the hospital. She testified that it was general practice for the doctors connected with the hospital to send their patients there to receive medication. She explained that she had been asked to give medication, upon a doctor's order, at least once or twice a week.

█ Clearly, nurse Jefferson was a hospital employee. She was acting as such when she administered the shot and made her observation of Mrs. Lewis. There was no evidence that she was "subject to the control" of Dr. Davis "with respect to the details of the work." *Western Adjust. & Insp. Co., supra,* 142 N.E.2d at 634. *See also Davis v. Schneider* (1979), Ind.App., 395 N.E.2d 283.

We conclude that the court did not abuse its discretion in denying Lewis' Motion to Amend the Pre–Trial Order to Conform to Proof as there was no evidence to support such a modification.

### III.

### Instructional Errors

Lewis complains that the court erred when it refused to give his tendered Instruction No. 7. It dealt with the existence of an agency relationship between Dr. Davis and nurse Jefferson.

█ In considering whether any error results from the refusal of a tendered instruction, the Court of Appeals must determine (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836. As was noted early on, there is insufficient evidence in the record to warrant the submission of an agency instruction to the jury. *See Davis v. Schneider* (1979), Ind.App., 395 N.E.2d 283. Instruction No. 7 was, therefore, properly refused.

Next, Lewis questions Defendant's Instruction No. 4 which was given by the court and is as follows:

"A doctor's duty to his patient is to possess and exercise that degree of skill in the care and treatment of his patient as would be possessed and exercised by members of the medical profession under same or similar circumstances in same or similar communities at that time. If the doctor, while exercising that degree of care and skill, makes a mistake or error in diagnosis, a mistake or error in judgment, or fails to realize the actual seriousness of the patient's condition, this would not constitute negligence on the part of the doctor."

He tendered a nearly identical duty instruction, No. 5A, which was refused by the court:

"A doctor's duty to his patient is to possess and exercise that degree of skill in the care and treatment of his patient as would be possessed and exercised by members of the medical profession under same or similar circumstances in same or similar communities at that time. If the doctor, while exercising that degree of care and skill, makes a mistake or error in diagnosis, a mistake or error in judgment, or fails to realize the actual seriousness of the patient's condition, this would not constitute negligence on the part of the doctor. On the other hand, if the doctor while not exercising that degree of care and skill, makes a mistake or error in diagnosis or fails to realize the actual seriousness of the patient's condition, this would constitute negligence on the part of the doctor."

█ On appeal, he contends that Instruction No. 4 was a misstatement of the law in that it "misadvised the Jury as to the nature and extent of a physician's duty to his patient." He, however, failed to so object at trial and later in his motion to correct errors.[4] Where the grounds asserted on appeal differ from those stated in the objections at trial, any alleged error in the giving

---

4. His objections at trial focused upon whether the second sentence of Instruction No. 4 was "misleading", confusing and constructed in an argumentative fashion.

of the instructions is waived on appeal. *Davis, supra* ; *Hendrickson & Sons Motor Co. v. OSHA* (1975), 165 Ind.App. 185, 331 N.E.2d 743.

In his argument on appeal, Lewis claims that the court's refusal to give Instruction 5A deprived him of a "balanced and complete" duty instruction. In so arguing, he focuses upon a physician's duty to use diagnostic aids and accepted clinical procedures in making a diagnosis.

■ Despite his contention to the contrary, we find Instruction 5A to be general in nature. If Lewis had desired an instruction which focused specifically upon a physician's duty as it relates to diagnostic aids and clinical procedures, he should have tendered one. He cannot now claim error on the court's refusal to instruct when no such instruction had been tendered. *City of Bloomington v. Holt* (1977), Ind.App., 361 N.E.2d 1211.

■ By his submission of Instruction No. 5A, Lewis has tendered a duty instruction nearly identical to the one given by the court. A party cannot complain of an error in an instruction if he has tendered an instruction to the court which contains the same alleged error. *Thornton v. Pender* (1978), Ind., 377 N.E.2d 613. Likewise, the trial court committed no error by its refusal to give Instruction No. 5A since it was nearly identical to the one given, No. 4. There is no error when a court refuses to give an instruction, the substance of which is covered by other instructions actually given. *Thornton, supra.*

■ Lewis next objects to the giving of Defendant's Instruction No. 3:

"A doctor is not limited to the most generally accepted method of care or treatment and the use of another form or method of care and treatment approved by the medical profession is proper. The fact that another physician would have used a different method of care or treatment or examination does not establish negligence."

Lewis claims that it instructs the jury on an issue which was not before it. Unfortunately, he failed to preserve any error as to these assertions because of his failure to so object at trial.[5] *Hendrickson, supra.*

The only question properly preserved for appeal was Lewis' assertion that there was no evidence to support the giving of Instruction No. 3. After a review of the record, we conclude that there was sufficient evidence to support the giving of this instruction. Two of Lewis' expert medical witnesses testified as to differing modes of treatment for anyone exhibiting Mrs. Lewis' symptoms. There is no error here.

■ Lewis objects to the trial court's giving of Defendant's Instruction No. 7 on the basis that it was repetitious. Because he failed to so argue on appeal, this objection is waived. *Doi v. Huber* (1969), 144 Ind.App. 451, 247 N.E.2d 103.

Instruction No. 7 is as follows:

"In determining whether or not Dr. Lyle Davis exercised that degree of skill in the care and treatment of Barbara Lewis as would be possessed and exercised by members of the medical professions under same or similar circumstances, such determination depends wholly upon the situation before the death of Barbara Lewis and not upon anything known or discovered afterwards which could not, with reasonable care, have been known or discovered before the death in question. In other words, in consideration of the evidence in this case, on the issue of negligence, such determination shall be made on the basis of what a physician exercising that degree of skill in the care and treatment of Barbara Lewis would have had in mind or what he should have known in the exercise of reasonable care at the time of or prior to the death in question."

---

5. Even if Lewis had preserved this error on appeal, his argument is not persuasive. Generally, the giving of an instruction which is not relevant to the issues is error. It, however, is grounds for reversal only where it appears that the jury's verdict could have been predicated upon the instruction. *Stanley v. Johnson* (1979), Ind.App., 395 N.E.2d 863. Such is not the case here.

On appeal, Lewis contends that this instruction wrongfully suggests to the jury that "they should not consider the condition of the body after death as bearing upon the issue of causation and the issue of negligence."

 When reviewing instructions on appeal, we will look to see if an appellant has demonstrated any harm. *Chrysler Corporation v. Alumbaugh* (1976), 168 Ind.App. 363, 342 N.E.2d 908, 348 N.E.2d 654. No reversible error exists where it appears that the right result has been reached by the jury and the giving of a particular instruction did not mislead the jury. *Honey Creek Corp. v. WNC Development Co.* (1975), 165 Ind.App. 141, 331 N.E.2d 452. We have concluded that Instruction No. 7 did not mislead the jury. We find no error in the giving of this instruction.

Lewis next complains that Defendant's Instruction No. 8 was slanted and biased. By so instructing the jury, Lewis claims that the court made it clear to the jury that "it believed their verdict should be for the defendant."

Instruction No. 8 is as follows:

"In this case there are two issues—that of liability and damages. The fact that the Court has instructed you on the measure of damages in this case does not mean that the Court believes that the Plaintiff is entitled to recover from the Defendant herein. These instructions on the measure of damages are given to assist you only in the event you should find liability on the part of Dr. Davis to the Plaintiff, James Lewis. These instructions on the issue of damages should only be considered by you if you determine under the instructions of the Court by a fair preponderance of the evidence, that the Plaintiff is entitled to recover against the Defendant, Dr. Davis."

We cannot agree with Lewis' interpretation of this instruction and will not respond to his bald assertion. Instruction No. 8 is neutral in tone and the court did not commit error by giving it to the jury.

Finally, Lewis argues that he was prejudiced by the cumulative effect of the court's giving of Defendant's Instructions # 3, # 4, # 5, # 7 and # 8. He contends that these instructions were argumentative in character and, as such, should not have been given. Our reading of these instructions indicates otherwise.

Judgment affirmed.

GARRARD, P. J., and CHIPMAN, J., by designation, concurs.